All right, our eighth case for this morning is United States v. Peterson, and we have Mr. Bugney, and we should have in a minute, we're going to hold off for a second Mr. Bugney because I'm sure we have Mr. Blader, but if we, we appreciate your patience, I'll say that. Mr. Blader, can you hear us? Yes, I can. Excellent. And you can hear him as well, Mr. Bugney? Yes, Your Honor. Excellent. Well, if you're ready, I'm sorry for the disruption, Mr. Blader, I'm sure it's United States v. Becky Peterson, 19-3461, and Mr. Bugney will begin. Thank you. May it please the Court. At sentencing, Becky Peterson had a lot of facts and militated towards leniency. She had cooperated with the law enforcement, she had participated in rehab and been sober for well over a year. She had several serious medical conditions as well, and unlike her co-defendant, she had not received the lion's share of the conspiracy's profits. She had significantly lower guidelines by about three years, and she had not possessed a firearm. Despite these significant mitigating factors and differences, and differences that almost always yield the lower sentence, she received the exact same sentence as her co-defendant. This was not the product of chance, where the individual weighing of 3553A factors happened to yield the same number, not at all. The district court pegged her sentence to Moore's, reasoning it had to achieve parity. In doing so, it took 3553A-6's statutory command and applied the wrong framework. It looked only at avoiding disparity as it related to Moore, but this court is repeating the need to avoid unwarranted disparities cuts across districts, not co-defendants. Mr. Bugney, let me ask you a question on that particular point. You've argued in your brief the district court is to avoid unwanted similarities, and here there seems to be this almost balancing of, on one side for your client, the prior record and the boasts, on the other side for Mr. Moore, the guns and the amount of methamphetamine involved. Oftentimes we see things like guns and amounts of methamphetamine as being distinguishing characteristics, rather than similar characteristics between two defendants. My question though goes to, how does that make it outside of the discretion that the district court would have? How does the equating or balancing that Judge Peterson was doing here between those two sides of the teeter-totter, how does that make it outside the discretion that he had to sentence? I don't think it's outside the discretion. The judge can always say that individual factors militate towards leniency, and others he thinks are aggravating. What our claim is that the judge misunderstood or misapprehended the fact that it needed to peg the sentence for Moore. And you can look at the transcript, especially at the appendix 19 at the bottom, you know, he says, I don't see anything that would greatly warrant a disparity here. So Mr. Bugney, could we pop up to the top of that page for just a minute? Yes, Your Honor. Because as I read this transcript, the judge begins by, as you're supposed to under Gaul, etc., etc., by calculating the guidelines. He says you've got to have a sentence that's comparable, and then this is phrased very And then when he moves to the individual circumstances, just as Judge Brennan just said, I think he sees some things on the, you know, negative side of the ledger for Becky, and she sees some things on the negative side of the ledger for Moore. But at the end of the day, as he says on the, I believe it's the next page, on page 20, he says, I think you both are kind of putting this together, so you know, one for all, all for one kind of situation. And he makes a discretionary call that in this particular instance, even though the guidelines advise different ranges, they should get the same sentence, which, by the way, is below her guideline range. And that's correct. It is below her guideline range, but the judge is pegging it towards Moore's which yielded significantly lower guidelines by three years, ignoring all the other aggravating factors. Why do you characterize it as ignoring versus just, you know, there are pluses for her, pluses for him, minuses, minuses, but he thinks when you, at the end of the day, the same sentence, the 66-month sentence is the right one for both of them. I don't see the ignoring. Well, I would say, Your Honor, that a prior pot possession, a prior, you know, four grams of marijuana sale 20 years ago and 15 years ago, those are rarely balanced off against possession of stolen firearms, especially in that number. Loaded pistols next to drug proceeds. It's not a common sentence, but the question is, is it one within the scope of his discretion? And I think that he could arrive at 66 months, but the question is, for this court, is where, did the judge peg it wrongfully to Moore? Did he look at that above all other factors? And that's really, you know, our claim here. If she had gotten... So your claim is that would be legal error if after he said, yes, you know, I have the right guidelines range, yes, here are all these factors, but I really just am determined to give these two people the same sentence. That would be legal error in your view? It would be slightly differently phrased. With what the record that we have, the judge repeatedly saying, I got to achieve parity. And the parity he's trying to achieve is not toward across districts or looking at how guideline sentences come. The parity he wants to achieve is between co-defendants. And Mr. Bugney, on that front, there is a 2018 opinion from our court, United States versus Solomon, 892 F third, and the jump side is 278, where the court makes the statement, a district court is entitled, if it wishes, to apply the rule against unwarranted disparities to co-defendants' sentences. And it cites this Statham case. Did that give Judge Peterson the ability to do this pegging to Moore? I don't think so. I think two things. One, Solomon has to be read by the claim that was raised. There, Solomon wanted to have the same sentence that Byrd, Bennett, and Varonis got, which were 18 and 54 months. And the claim that he raised was that the sentence was substantively unreasonable. Now, a substantively unreasonable sentence is available. This court has found it twice. And Gall acknowledges, hey, there could be a substantively unreasonable below guideline sentence. And there in Solomon, the court is saying, you can look at this. We can look at how the other co-defendants were treated to find substantively unreasonable. But that's a much different claim than what we have here. If Judge Chang had decided, look, I see a lot of dissimilarities between you and Byrd, Bennett, but I got to achieve parity. And so I got to give you 54 months. The government would have a right claim to say, you can't do that. Or I got to put you down at Varonis at 18 months. It's the fact that the judge here mistakenly thought disparity and the need to avoid disparity is going to go, and I got to put 66 months there. Had the judge come out at 63 months, it's well within his discretion. But the judge went and pegged it at 66. And Solomon doesn't change that. I think Solomon opens the door for what we always know, is that judges have come up with a sentencing philosophy. And co-defendants usually get around the same sentence. The judge doesn't come in a blank slate. He has already seen the crime, thought about the amounts, thought about the appropriate sentence. But Pepper and Gall demand that it be an individualized assessment. Not that the judge ignore the guidelines. He said that we were fetishizing over the guidelines. And go, it seems like the same crime, I'm going to give the same time. You have to weigh all of those factors. How much he had to rely upon what had happened and more. Because it's the exact same sentence. And going away from all those other factors. I look like you had a question. Do you want the rest for your rebuttal? Yeah, unless anybody has questions. Okay. I'll wait for a rebuttal. Mr. Blader. Good morning, your honors. May it please the court, Scott Blader on behalf of the United States. Your honors, although it's presented as an argument for procedural error, the defendant's challenge really attacks the district court's sentencing discretion in this case. And it contorts the analysis to get there. A fair review of the record reveals there's no procedural error in this case. And a district court sentence is procedurally sound, thoughtfully crafted, and well-reasoned. There is no dispute procedurally, which is the challenge here that the court correctly calculated the guidelines in this case. Which as your honors know, in and of themselves are intended to mitigate disparity. It also provided a fair opportunity for argument and considered the necessary 3553A factors such as punishment, specific deterrence and a need to protect the public. And said as much before it ultimately issued a sentence that was 31 months below the guidelines. And I would note that that's noteworthy under the case law and what certain cases such as Statham teach us is that in this case, the guideline sentence actually called for something that was 31 months below what she actually received. Mr. Blader on this topic of the balancing or the connections that Judge Peterson seems to have On one side of the balance, as I questioned Mr. Bugney, you've got Ms. Peterson's prior record and the comments, the boasting comments about being in charge of the operation. The other side, you've got the amount of methamphetamine at issue and the guns. Was Judge Peterson here balancing apples and bananas? Oftentimes we see the amount of the drug and the firearms as distinguishing characteristics between the defendants rather than similarities. I believe that the court marshaled its way through those factors in a very thoughtful manner, so I will take them in turn. As it relates to the guns, the court reviewed the record, including the PSR, and understood that essentially what was occurring there is that this Mr. Moore, the co-defendant, was collecting guns not as some sort of attempt to move forward in a violent manner and advance drug activity, but in fact he was taking them in trade, which was not too unusual for someone in the community of Northwoods of Wisconsin to collect guns. As it relates to the amounts, the court was able to determine through the PSR and through some of the references from the CIs and the undercovers that in fact, although the hand-to-hands were done primarily by Mr. Moore, if you will, it was clear that Ms. Peterson was actually directing some of the undercovers to buy from Mr. Moore, and that she herself had her own customer base, and that she in fact was well aware of the type of activity that was going on at the same place that she in fact was living. So I think the court looked at each of those factors and in the balance, washed them together to find that both of them were equally culpable for what they called a joint undertaking activity. Clearly, the two of them were living together in a long-term relationship at the same location, and both of them through their own statements were aware of the day-to-day operations. And so I think the court considered that along with her respective concerns that you've already addressed, which her co-defendant did not have. Quite simply, she had a criminal history, and it was for drug distribution. She also had a criminal history that involved a possession of a firearm. She also had a substance abuse history, which I think is very noteworthy here, because the court felt that that 50-year substance abuse history, when weighed in the balance of all the things to be considered, placed her at a greater risk to recidivism. And so for those reasons, I think the court eventually found its path to 66 months. It did not peg itself there. It landed there. Your Honor, I would note that there was a thoughtful analysis as well that was perhaps glossed over by the defendant in the fact that there was a real comparison and contrasting going on between these two individuals by the court. And I think that gets back to Your Honor's overall concern of whether there was some actual specific consideration given to Ms. Peterson's actual predicament. It was clear that the court was actually doing an analysis of the good points that she had provided to law enforcement and her negative points. And so not only did it take into account some of the things that I stressed, like her substance abuse and prior criminal history, it also gave her credit for the fact that she actually did provide a debriefing and that she had shown remorse. And it also took into account the fact that she, in fact, was willing to consider the fact that her age and some of her characteristics led him to believe that this situation and the sentence that he would give her would not be unduly necessary or beyond what was necessary given the fact that she had some health concerns as well. So there was a totality of circumstances that were taken into account here and it clearly was thoughtfully explained. There's nothing here that was unwarranted or nothing here that was procedural error. If there's no further questions, I would rest on the government's brief and ask that you affirm the district court. All right, thank you very much. Mr. Bugney. Back to Judge Brennan's question. The apples and oranges balancing that the court had done for apples and bananas only arrives at the 66 months because the judge was so focused on parity. Parity, he had walked into that courtroom thinking it's got to be around what Moore got. It has to be what Moore got and I want to treat everyone similarly. But that similar treatment ignored all of the differences between her and Moore. And I use the word ignored because they are such distinctly different. We never see 10 firearms, five of them stolen, one of them loaded next to the meth. That's not a collection. A loaded pistol is not a collector's piece when it's right next to the gun. Lack of distinction is really what the judge did here. I will grant you, Mr. Bugney, that that's very unusual. And to be said, oh, that's what good old boys in Wisconsin do, which may be true, by the way. You know, they enjoy their deer hunting and all the rest of it, but it's still not what one normally hears. Look, I'm a good old boy from Wisconsin. I can tell you there aren't 10 stolen firearms in my house. And I can tell you also that Becky Peterson has the right to expect that under Pepper and under all of the Supreme Court's precedent, and this court's precedent, that there be an individualized assessment, that it would take account of the guidelines, but it wouldn't be pegged just to Moore. Now, had the court not made those comments about the need to derive a parity so many times in the statement of reasons and throughout the transcript, it'd be a different case. But here this court can't rest confident that the court, the district court, understood 3553A6. So we'd ask that the court would reverse and remand for resentencing. All right, thank you very much. Thank you as well to the government, Mr. Blader. Sorry for all the technical disruptions, but we will take this case under advisement.